## BEVIN v GRIFFITHS

Ohio Appeals, 9th Dist, Lorain Co

No 623.   Decided Nov 9, 1932

Stevens & Stevens, Elyria, for plaintiff in error.

J. R. Kistner, Cleveland, and Fauver & Fauver, Elyria, for defendant in error.

WASHBURN, J.

The action was not one at common law, based upon the negligent failure of the owner of the dog to properly restrain him and keep him so safely that he might not injure others. There was no allegation that the dog had vicious propensities or that the defendant knew of the same, and having such knowledge kept the dog in a negligent manner; and hence the action was one to recover damages under the provisions of §5838 GC.

At the close of the evidence on behalf of the plaintiff, the court granted a motion to direct a verdict in favor of the defendant, and if said §5838 GC is not applicable to the situation shown by the pleadings and evidence introduced, the trial court was right in directing a verdict and rendering judgment for the defendant; but if the evidence established or tended to establish facts bringing the case within the provisions of said section, then the action of the court in rendering judgment for the defendant was wrong, because there was evidence tending to prove that the defendant harbored the dog, that the dog injured the plaintiff, and that the plaintiff was damaged.

The evidence does not show that the dog was vicious or that his acts when the injury was inflicted were either vicious or mischievous; it simply shows that the dog was afflicted with a skin disease that caused a very itchy sensation, which caused him to vigorously itch himself upon the furniture and other objects and to move about very rapidly, and that in so moving he came in contact with the plaintiff with such force as to cause the injuries complained of.

We are not concerned with the fact as to whether or not the dog actually injured the plaintiff or whether or not he could have injured her in the manner she claimed, because there was direct and positive evidence that the dog did injure the plaintiff in the manner indicated, and it was for the jury to determine that question, and of course the court had no right to determine it as a matter of law.

Now it is claimed that said section of the statutes has no application to a state of facts that have been indicated. That section reads as follows:

"A dog that chases, worries, injures or kills a sheep, lamb, goat, kid, domestic fowl, domestic animal or person, can be killed at any time or place; and, if in attempting to kill such dog running at large a person wounds it, he shall not be liable to prosecution under the penal laws which punish cruelty to animals. The owner or harborer of such dog shall be liable to a person damaged for the injury done."

Sec 5838 GC.

It will be noticed that the statute provides that the owner or harborer of a dog that injures a person shall be liable to such person for the injury done. The statute does not in terms make that liability depend upon whether the dog acts viciously or mischievously, or upon the negligence of the owner or harborer of the dog, and does not exempt from its protection a servant of the defendant.

In an opinion construing this statute, the Supreme Court said that—

"The statute imposes an absolute liability on the owner of the dog, and the averment and proof of scienter are unnecessary. The owner is liable regardless of his conduct in the keeping of the dog. Under the statute, the conduct of his property renders him liable, and his own negligence in the matter is wholly immaterial."

Kleybolte v Buffon, 89 Oh St 61, at p. 66.

Later, in 1923, the Supreme Court in one of its opinions said:

"We adhere to the interpretation of §5838, GC, as declared in the case of Klaybolte v Buffon."

Silverglade v Van Rohr, 107 Oh St 75, at p. 80.

And in a still later case, the Supreme Court quotes with approval the language hereinbefore quoted from the opinion in Kleybolte v Buffon, supra.

Lisk v Hora, 109 Oh St 519, at p. 522.

In Silverglade v Van Rohr, supra, it is said that the effect of the decision in Kleybolte v Buffon, supra, is to make the owner of the dog liable for all damages occasion-

ed to a person who is chased, worried, injured or killed by the dog, "and the necessary elements to establish such liability are the ownership of the dog and the injury sustained because of the dog."

Said case in which that language is used was a case where a party riding in an automobile upon a public highway was injured because the dog owned by the defendant in that case ran out into the road in front of said automobile, it having been the habit of said dog to run after automobiles passing along the road.

It is true that in most all of the cases where a recovery has been had under said statute or similar statutes in other states, the dog causing the injury acted in either a vicious or mischievous manner, and it is urged that notwithstanding what the Supreme Court has said in reference to said statute, the plaintiff, in order to recover, must prove that the conduct of the dog was vicious or mischievous.

We have been cited to but one case which expresses that view, and that is the case of Schraeder v Koopman, 190 Wis. 459, where the Supreme Court was construing a similar statute; but the expression of such view in that case was clearly obiter dicta, because that case had been submitted to a jury, and the opinion states that "The jury found that the plaintiff was guilty of contributory negligence and that the defendants did not fail to exercise ordinary care in relation to the dog. We think both answers were sufficiently substantiated by the evidence," and the judgment in favor of the defendants was affirmed. It was therefore unnecessary for the court to say that according to its construction of the statute "there was no case to go to the jury."

We have not been cited to any case and have found none in which the question has been raised as to whether the fact that the injured party was a servant or employee of the owner of the dog, deprived him of a right of action given by the statute, or whether such relationship in any way affected his right to damages under the statute.

It is urged that as the plaintiff was the person who, as the servant of the defendant, fed and cared for the dog, she was herself a harborer of the dog, and could not recover damages from a co-harborer "for an act for which they may be jointly liable."

We do not agree with that contention. Assuming that the facts might be such as to make the plaintiff jointly liable with defendant to a third person injured by the dog, such is not the case here, because there was no injury to a third person, and hence the question of joint liability is not presented; and if it were, it would be a question for the jury and not for the court.

There is no language in the statute that tends to indicate an intention that a servant shall not be considered "a person" to whom a right of action is given by the statute.

In the case at bar, we sympathize with counsel for defendant in their contention that the legislature did not intend by said statute to make the owner or harborer of a dog liable to his servant for the consequences of an injury caused by a dog in the manner in which this injury was caused, but whether an owner or harborer of a dog should be liable for an injury inflicted or caused by his dog under any and all circumstances is a legislative and not a judicial question. Courts cannot properly legislate nor refuse to enforce a law enacted by the legislature which the legislature has a constitutional right to enact; this principle is firmly established and is founded on a sound and wise public policy, and therefore the question for us to determine in this case is whether the legislature has provided that the owner or harborer of a dog shall be liable for an injury to his servant, inflicted by his dog under the circumstances which the evidence tended to establish in this case.

The last two lines of said section read: "The owner or harborer of such dog shall be liable to a person damaged for the injury done," and "such dog" is described in said section as "a dog that * * * injures * * * a domestic animal or person."

This is plain and simple language, and the rule is that courts may not, even in order to give effect to what they may suppose to be the intention of the legislature, adopt a construction of a statute which is not supported by the words of the statute, even though the consequences of following the construction of the plain and simple language of the statute would be to defeat the supposed intention of the legislature.

"But the intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation. The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact. That body

should be held to mean what it has plainly expressed, and hence no room is left for construction."

Slingluff et v Weaver et, 66 Oh St 621 (syllabus 2).

"The province of construction is to ascertain and give effect to the intention of the legislature, but its intention must be derived from the legislation and may not be invented by the court. To supply the intention and then give the statute effect according to such intention would not be construction but legislation."

State ex v Roney, 82 Oh St 376 (part of syllabus 1).

"It is the duty of the courts to enforce a statute which they find to be plain and unambiguous, if otherwise valid."

Miller v Auble, 31 Oh Ap 67 (syllabus 3). (7 Abs 285).

See also Swetland v Miles, 101 Oh St 501.

There are a large number of cases applying the principle that, where the language of a statute is plain and simple, courts cannot ascribe to the legislature an intention not expressed by the words used by the legislature, and we feel bound by that rule and therefore hold that the trial court was in error in determining that said statute had no application to the facts which the evidence established or tended to prove.

The judgment will therefore be reversed and the cause remanded.

PARDEE, PJ, and FUNK, J, concur in judgment.