[Cite as *Harris v. Hilderbrand*, 2022-Ohio-1555.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

ALLISON HARRIS,

Plaintiff-Appellee,

v.

DUSTIN HILDERBRAND,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 JE 0013**

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 20-CV-5

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Reversed.

---

*Atty. Scott S. Blass,* Bordas & Bordas, PLLC, 1358 National Road, Wheeling, West Virginia 26003 and *Atty. Laura P. Pollard,* Bordas & Bordas, PLLC, One Gateway Center, 420 Fort Duquesne Blvd., Suite 1800, Pittsburgh, Pennsylvania 15222 for Plaintiff-Appellee and

*Atty. Matthew P. Mullen* and *Atty. John P. Maxwell,* Krugliak, Wilkins, Griffiths & Dougherty Co., LPA, 405 Chauncey Ave. NW, New Philadelphia, Ohio 44663 and *Atty. Aaron M. Glasgow,* Isaac Wiles Burkholder & Teetor, LLC 2 Miranova Place, 7th Floor, Columbus, Ohio 43215 for Defendant-Appellant.

Dated: May 9, 2022

_____

**Robb, J.**

{¶1}    Defendant-Appellant Dustin Hilderbrand appeals the decision of the Jefferson County Common Pleas Court denying his motion for summary judgment on the negligence claim brought by Plaintiff-Appellee Allison Harris when Appellant's K-9 dog bit her at a cookout he hosted at his house.  Appellant is a Deputy with the Belmont County Sheriff's Department and claimed immunity as an employee of a political subdivision.  The trial court found that whether or not Appellant was immune for negligence was an issue for the jury to decide.

{¶2}    Appellee attempted to file a cross-appeal in this case.  Appellee asserted the trial court erred in granting summary judgment to Appellant on Appellee's strict liability dog bite claim.  The basis for granting summary judgment to Appellant on this claim was the doctrine of sovereign immunity.

{¶3}    For the reasons expressed below, the trial court's decision is reversed and judgment is entered in favor of Appellant.  Appellant is entitled to sovereign immunity as a matter of law on Appellee's negligence claim.  Although Appellee did not properly file a cross-appeal, we conclude the grant of summary judgment for Appellant on the strict liability dog bite claim was correct.

Statement of the Facts and Case

{¶4}    Appellant is a deputy with the Belmont County Sheriff's Department and is a K-9 handler.  Hilderbrand Depo. 16.  As a K-9 handler, he is required to keep the dog assigned to him in his home.  Hilderbrand Affidavit; Zusack (Chief Deputy of Belmont County Sheriff's Department) Affidavit.  The purpose of this type of arrangement is to "solidify the bond between the deputy and the do[g], so that they work well together while on duty."  Zusack Affidavit.  Appellant's K-9 dog is Xyrem.  Appellant owns three other dogs.  Hilderbrand Depo.18-19.

Case No. 21 JE 0013

{¶5} On August 10, 2019, Appellant and his girlfriend, Kelcie Leonard, hosted a cookout at their residence in Rayland, Jefferson County, Ohio. Hilderbrand Depo. 5, 39. Two other couples attended the cookout – Carrie and Andrew Chesonis and Appellee and her boyfriend, Deputy Thomas Riedel (Belmont County Sheriff's Department Deputy). Hilderbrand Depo. 41.

{¶6} The cookout started around 4:00 p.m. in their back yard. Prior to dinner, Appellant demonstrated some of Xyrem's police training, which included finding contraband. Appellant used narcotics from his cruiser for Xyrem to find. The contraband is kept and used by Appellant as a training tool for Xyrem. In response to the command "Belmont County Sheriff's Department," Xyrem barks at the door; this command is an alert command. Appellee testified that when that command was used Xyrem became very aggressive. Harris Depo. 33. Riedel stated that command made Xyrem agitated. Riedel Depo. 40. Carrie Chesonis and Kelcie Leonard testified the command made the dog a little excited. Carrie Chesonis Depo. 25; Leonard Depo. 45. These demonstrations occurred in the back yard.

{¶7} At around 5:00 p.m. or 5:30 p.m., the hosts and the guests ate outside; the dogs were put inside to eat. Appellant Depo. 44-45; Appellee Depo. 40; Andrew Chesonis Depo. 31; Leonard Depo. 41. The dogs remained inside for about 30 to 60 minutes. Appellant Depo. 45; Appellee Depo. 40; Andrew Chesonis Depo. 31; Leonard Depo. 41.

{¶8} After dinner, the dogs were returned to the back yard. Appellee was setting up a frisbee type of game called Can Jam when Xyrem jumped up and bit her left breast. It is undisputed that no command was given and that Xyrem did not appear to be aggressive toward Appellee or any guest. This bite occurred approximately an hour to an hour and a half after the last commands of the demonstration were given. Appellee Depo. 87-88; Andrew Chesonis Depo. 55-56.

{¶9} Appellee was taken to the hospital and required medical treatment for her physical and emotional injuries.

{¶10} Appellee filed a complaint against Appellant in January 2020 asserting strict liability for the dog bite and that Appellant was negligent. 1/6/20 Complaint. Appellant answered the complaint admitting the dog bite occurred, but asserted he was immune from liability as an employee of a political subdivision. 3/4/20 Answer.

**{¶11}** Following discovery, Appellant moved for summary judgment asserting immunity applied and that there was no evidence he was acting manifestly outside the scope of his employment or official responsibilities when Xyrem bit Appellee or that he acted maliciously or in bad faith. 1/28/21 Motion for Summary Judgment. Attached to his motion were his own affidavit and the affidavit of the Chief Deputy in the Belmont County Sheriff's Department, James Zusack.

**{¶12}** Appellee filed a motion in opposition to summary judgment and a cross-motion for summary judgment arguing Appellant's actions cannot always be in the scope and course of his duties. She asserted Appellant's actions at the cookout were not in the scope and course of his duties and the strict liability statute for dog bites applied. She also asserted the immunity exception of manifestly acting outside the scope of employment applied. 2/22/21 Appellee Motion in Opposition to Summary Judgment and Cross-Motion for Summary Judgment.

**{¶13}** Each party filed a reply to the other party's motion. 3/5/21 Appellant's Reply to opposition and motion for summary judgment; 3/29/21 Appellee's Reply in support of cross motion; 5/3/21 Appellant's Supplemental Motion in support of summary judgment; 5/3/21 Appellee's Supplemental motion in support of summary judgment.

**{¶14}** The trial court granted Appellant's motion for summary judgment in part. It found immunity barred the strict liability action but did not bar the common law negligence action: "Defendant's Motion for Immunity is sustained with respect to Strict Liability and Overruled with respect to Common Law Negligence." 5/5/21 J.E. The trial court further explained, "This is not a finding that immunity exists. It is simply overruling the Motion for Summary Judgment on that issue leaving it for the Jury to decide." 5/5/21 J.E. In reaching that conclusion the trial court explained:

> Defendant's first defense is immunity because he is a police officer. He is the trainer of Xyrem and is required to keep Xyrem at his home. Because of that duty, Defendant claims that he is immune from liability.

> This Court disagrees. While Defendant is required to keep Xyrem in his home, he is not required to entertain house guests, nor to arm the bomb in the presence of house guests. It would be akin to passing around his loaded service weapon cocked and with the safety off at a party and then claiming

immunity for an accidental discharge. Both Xyrem and the service weapon are for police work and neither generate immunity when used for entertainment or amusement.

\* \* \*

If Defendant was performing his duties with Xyrem and injuries result, he would be immune even from negligence. For example, if Xyrem escaped confinement, broke his chain or slipped his collar and caused injury, Defendant would be immune even if his negligence allowed the escape because Defendant was required to keep the dog.

There is no evidence that any part of Defendant's job includes entertaining house guests with "Alert" commands. In those situations he is just a man with a dog like any other.

5/5/21 J.E.

**{¶15}** Appellant appealed the trial court's decision. 6/1/21 Notice of Appeal.

<u>Final Appealable Order</u>

**{¶16}** Appellant is appealing the trial court's denial of summary judgment on the common law negligence claim holding that it was a jury issue as to whether Appellant is entitled to immunity protection. We have recently explained the determination that there is a genuine issue of material fact in an immunity case which results in the denial of the summary judgment motion is a final appealable order:

The denial of summary judgment is generally not a final, appealable order, and a court of appeals has no jurisdiction over non-final orders. *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 9. However, in an immunity case, there is the following statutory exception to this rule: "An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." R.C. 2744.02(C). This includes the right to file an interlocutory appeal from a trial court's decision finding a genuine issue of material fact on an immunity element and thus denying a political subdivision's Civ.R. 56(C) motion for

summary judgment seeking immunity. *Hubbell*, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878 at ¶ 12, 20-21, 27 (emphasizing the statute's use of the words "benefit" and "alleged"). In such appeal, the appellate court conducts a de novo review to determine if judgment should be entered for the political subdivision as a matter of law or if there remains a genuine issue of material fact requiring "further development of the facts necessary to resolve the immunity issue." *Id.* at ¶ 21.

We therefore review an interlocutory decision on whether there was a genuine issue of material fact on the political subdivision's negligence when the pertinent exception to immunity so requires. [Citations omitted.]

*McCullough v. Youngstown City School Dist.*, 2019-Ohio-3965, 145 N.E.3d 996, ¶ 24-25 (7th Dist.).

## Standard of Review

{¶17} Appellate courts review decisions awarding summary judgment de novo, i.e., independently and without deference to the trial court's decision. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment shall be granted when the evidence shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Civ.R. 56(C). Only if it appears reasonable minds can only find in favor of the movant, after considering the evidence in the light most favorable to the non-movant, will summary judgment be granted. Civ.R. 56(C). A summary judgment movant has the initial burden of stating why the movant is entitled to judgment as a matter of law and showing there is no genuine issue of material fact. *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-294, 662 N.E.2d 264 (1996). The non-moving party then has a reciprocal burden. *Id.* The material issues of each case depend on the applicable substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Byrd*, *supra*, at ¶ 12.

## Assignment of Error

"The trial court erred when it denied Dustin Hilderbrand's motion for summary judgment because he is immune under Chapter 2744 of the Revised Code."

**{¶18}** Appellant asserts the trial court did not analyze the immunity statute or enumerated statutory exceptions in its order when finding there was a genuine issue of material fact as to whether he was immune from the negligence claim. He claims he is immune from civil liability unless Appellee can show the exception in R.C. 2744.03(A)(6)(a) is applicable.

**{¶19}** Appellee argues the exception in R.C. 2744.03(A)(6)(a) applies. She asserts there is a genuine issue of material fact as to whether Appellant was acting manifestly outside his scope of employment. It is for a jury to decide. For the following reasons, we disagree.

**{¶20}** R.C. 2744.03(A)(6) states:

(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:

* * *

(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, *the employee is immune from liability <u>unless</u> one of the following applies*:

(a) *The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;*

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that

section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

(Emphasis added.)

**{¶21}** Appellee concedes subsection (b), involving bad faith or recklessness, is inapplicable. Contrary to the dissenting opinion, whether this dog previously bit other individuals is immaterial to the determination of whether Appellant was manifestly outside the scope of his official responsibilities at the time of the bite at issue in this case. This fact may likely impact a determination of recklessness under subsection (b), but it is not at issue here. Appellee also asserts an argument in her cross-appeal concerning subsection (c), lifting Appellant's immunity due to the strict liability dog bite statute. That issue is discussed below when we address her cross-appeal.

**{¶22}** Our analysis in this section concerns only subsection (a) and whether there is a genuine issue of material fact as to whether Appellant's acts or omissions were manifestly outside the scope of his employment or official responsibilities. Manifestly is defined as plainly or obviously. www.dictionary.com/browse.manifestly.

**{¶23}** The Eleventh Appellate District has explained the issue of whether an employee was within the scope of employment is generally a question of fact for the jury. *Hicks v. Allen*, 11th Dist. Ashtabula No. 2005-A-0002, 2007-Ohio-693, ¶ 17 (K-9 dog bite political subdivision employee immunity case), citing *Obsborne v. Lyle*, 63 Ohio St.3d 326, 330, 587 N.E.2d 825 (1992), citing *Posin v. A.B.C. Motor Court Hotel*, 45 Ohio St.2d 271, 344 N.E.2d 334 (1976). The determination becomes a question of law, however, when the material facts are undisputed and no conflicting inferences are possible. *Id.* See *Szefcyk v. Kucirek*, 9th Dist. Lorain No. 15CA010742, 2016-Ohio-171, ¶ 16 ("summary judgment is appropriate when a plaintiff fails to present sufficient facts to rebut the presumption of immunity"); *Shadoan v. Summit Cty. Children Servs. Bd.,* 9th Dist. Summit No. 21486, 2003-Ohio-5775, ¶ 14-15 (appellant failed to set forth sufficient facts to rebut the presumption of immunity under Section 2744.03(A)(6)); *See also O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 72-92 (undisputed facts showed recklessness exception to employee immunity was inapplicable, and thus summary judgment was warranted).

**{¶24}** The Second Appellate District has explained that R.C. 2744.03(A)(6) does not define what conduct is "manifestly outside the scope of employment." *Martcheva v. Dayton Bd. of Education*, 2d Dist. Montgomery No. 29144, 2021-Ohio-3524, ¶ 80. However, courts have concluded that "conduct is within the scope of employment if it is initiated, in part, to further or promote the master's business." *Id.*, citing *Jackson v. McDonald*, 144 Ohio App.3d 301, 307, 760 N.E.2d 24 (5th Dist.2001) and *Coterel v. Reed*, 2016-Ohio-7411, 72 N.E.3d 1159, ¶ 17 (2d Dist.) and *Curry v. Blanchester*, 12th Dist. Clinton Nos. CA2009-08-010, CA2009-08-012, 2010-Ohio-3368, ¶ 30. "For an act to fall within the scope of employment, it must be calculated to facilitate or promote the business for which the [employee or agent] was employed." *Id.*

**{¶25}** In *Hicks*, the Eleventh Appellate District reviewed a trial court decision granting immunity for the K-9 officer when the dog knocked over an individual and caused her to sustain injuries. One of the issues before the court was whether the officer was manifestly acting outside the scope of his employment when the injuries occurred. In that case, the K-9 Officer's shift began at 3:00 p.m. and the injuries occurred when the officer was preparing to leave his residence for work. *Id.* at ¶ 2, 22. The officer was putting water in his patrol car for the dog, while the dog was off its leash. *Id.* at ¶ 2. The officer heard barking and went to investigate. *Id.* The officer found Hicks on the ground with the dog standing over her barking. *Id.* Hicks stated she was by her burn barrel when the dog jumped on her and knocked her down. *Id.* The evidence indicated the K-9 Officer had not radioed dispatch that he was on duty. *Id.* at ¶ 22. However, there was also evidence that he was leaving in response to a call to search for someone. *Id.* The Appellate Court found "this detail is insufficient for us to conclude, as a matter of law, [the officer] was acting within his scope of employment." *Id.* Thus, the court found there was a genuine issue of material fact.

**{¶26}** Judge Grendell concurred in part and dissented in part stating the facts indicate the officer's actions were not manifestly outside the scope of his employment. *Id.* at ¶ 56-63 (Grendell, J., concurring in part and dissenting in part). The reasoning supporting that decision was there was evidence the deputy's care of the dog was in furtherance of the county's decision to utilize the dog as a tool of law enforcement and to delegate responsibility for maintenance of the dog to the deputy the dog was assigned.

*Id.* at ¶ 58.  Furthermore, she reasoned the uncontroverted testimony was the officer was responding to a police call at the time of the incident; "he was summoned to proceed directly to a particular area." *Id.*

**{¶27}** It is noted the *Hicks* majority did not remand the matter to the trial court for further findings on that issue because it found the dog bite statute (strict liability) lifted the officer's general immunity.  *Id.* at ¶ 23.

**{¶28}** Here, in finding a genuine issue of material fact, the trial court focuses on the demonstrations Appellant did with Xyrem.  The language the trial court utilizes to find a genuine issue of material fact insinuates the bite happened during the demonstrations.  That is not accurate; the evidence establishes there was a span of time between the demonstrations and the bite.

**{¶29}** The timeline of when the bite occurred is uncontroverted.  The demonstration occurred prior to dinner.  The dogs, including Xyrem, were put inside to be fed while the guests ate outside.  The dogs were inside for approximately 30 to 60 minutes eating dinner.  The bite occurred after the dogs returned to the back yard after dinner; the bite occurred at least one hour after demonstration.  No working commands were given at the time of the bite.  Also, the testimony indicated that there was nothing in the way Xyrem was behaving right before the bite to suggest it would happen.  Appellee Depo. 44.  Furthermore, there is nothing in the record to indicate the bite command was ever demonstrated.

**{¶30}** The affidavit of James Zusack, Chief Deputy of the Belmont County Sheriff's Department, was attached to Appellant's motion for summary judgment.  This affidavit states:

> As a requirement of their position, K-9 deputies must keep and care for their dogs at their homes when they are off duty, and to supervise the conduct of the dog at all times.  The purpose of the arrangement is to solidify the bond between the deputy and the do[g], so that they work well together while on duty.  The arrangement also allows the deputy and the dog to be on call and available as needed as a unit, and to ensure that the dog is continually supervised.  Keeping their dogs in their home and caring and supervising the dog is one of their duties as a K-9 deputy.  K-9 deputies are not

permitted to work in that position if they are not willing or unable to keep and care for their dogs in their home.

Zusack Affidavit ¶ 4.

**{¶31}** The affidavit also indicates K-9 deputies receive a stipend to cover the expenses for caring and housing the dog. Zusack Affidavit ¶ 5.

**{¶32}** Appellee argues Appellant has personal insurance coverage to indemnify him in this matter and he has not received any reservation of rights from the insurance company. She asserts this policy confirms he was not on duty at the time she was injured and thus, immunity does not apply. We find this insurance argument has no bearing on an immunity analysis under R.C. 2744 et seq. The question is whether Appellant was acting within the scope of his official responsibilities, not whether he had insurance.

**{¶33}** Considering the facts of this case, we hold as a matter of law Appellant was not manifestly acting outside the scope of official responsibilities at the time the bite occurred. As stated, manifestly means obviously. The demonstration was at the request of the guests, and no act during that demonstration was improper; the attack or bite command was not demonstrated. Appellant acted prudently in removing the dogs during dinner and their feeding time. There was a span of time, around one hour, from the time of the demonstration to when the bite occurred. The testimony indicated the bite was unprovoked, and there was no notice it was about to occur; the bite was spontaneous.

**{¶34}** The material facts are undisputed, and they do not demonstrate that Appellant was manifestly outside the scope of his official responsibilities at the time. Instead, the only evidence on this issue was the affidavit of his superior, which confirms that Appellant, as a K9 deputy, was *required* to "keep and care for" his dog at his home while off duty to "solidify the bond between the deputy and dog, so that they work well together on duty" and this arrangement allows them to be available when on call. Zusack Affidavit.

**{¶35}** Admittedly, the bite occurred during a social gathering. However, that does mean Appellant was acting manifestly outside his official responsibilities when he held a social gathering in which the canine was permitted to be in attendance. It is undisputed a part of a K-9 officer's duty is to house and take care of the canine. Being at the cookout, gave the dog a chance to acclimate to people in different situations and bond in the family

unit. Requiring Xyrem to live with Appellant and to be a part of Appellant's household facilitates and promotes the business of the Belmont County Sheriff's Department. It ensures Xyrem can be around people and learn how to properly behave in diverse human settings while at the same time be trained for his job of narcotic detection and apprehension. To hold otherwise would essentially mean Appellant is not permitted to have house guests or must lock up the canine every time he has a guest. To prohibit an officer to have house guests if they are a K-9 unit would result in fewer officers accepting the official responsibilities of and becoming a K-9 unit. K-9 units are a valuable tool to police departments and our communities. Also, to require the dog to be locked up any time a K-9 officer may have guests could have serious implications on how the dog reacts to people in real life situations when on the job. Foreclosing immunity in a situation such as this will keep otherwise capable officers from becoming a K-9 officer and could have training implications on the dog being around others in the field. Furthermore, the claim here is mere common law negligence. Being "manifestly outside" the scope of his official responsibilities is a high standard. The facts of this case indicate, as a matter of law, Appellee cannot meet that burden.

{¶36} The undisputed facts of this case do not present a genuine issue of material fact. We are not simply deciding a matter of law, but examining the fully developed summary judgment evidence and drawing all the facts and inferences against the nonmoving party to determine whether, as a matter of law, no genuine issues of material fact exist for trial. Civ.R. 56; *Bravard v. Curran*, 155 Ohio App.3d 713, 2004-Ohio-181, 803 N.E.2d 846, ¶ 9 (12th Dist.); *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 120, 413 N.E.2d 1187 (1980). Although this was an unfortunate situation, reasonable minds can find only one conclusion, i.e., Appellant is entitled to immunity as a matter of law because there is nothing tending to show that he was acting manifestly outside the scope of his official responsibilities at the time of the incident.

{¶37} Appellant's assignment of error has merit.

Appellee's Cross Appeal

{¶38} Appellee attempted to file a cross appeal in this case. She was attempting to argue the trial court incorrectly determined immunity based on being an employee of a political subdivision for the strict liability dog bite claim (R.C. 955.28(B)). This is the

argument concerning R.C. 2744.03(A)(6)(c). Her attempted cross appeal was not only ineffective because Appellee did not file a timely notice of cross appeal, but also because the ruling regarding strict liability was not a final appealable order.

**{¶39}** The first time she raised the cross appeal was in her Appellee brief. She did not file a separate notice of cross appeal; instead, she used her brief as the notice of cross appeal. Without determining if that was proper, it was clearly not timely. Appellate Rule 4(B) provides that if a notice of appeal is timely filed by a party, another party may file a notice of cross appeal within the appeal time period or within 10 days of the filing of the first notice of appeal. App.R. 4(B)(1). Appellee did not comply with this requirement and thus, the attempt to cross appeal did not invoke our jurisdiction to address the issue raised in the cross appeal.

**{¶40}** Furthermore, the trial court specially determined immunity applied to the strict liability claim and granted Appellee summary judgment on that issue. 5/5/21 J.E. ("Defendant's Motion for Immunity is sustained with respect to Strict Liability * * *."). The political subdivision immunity statute specifically states:

> An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order.

R.C. 2744.02(C).

**{¶41}** The grant of immunity for a political subdivision or an employee of a political subdivision is not a final appealable order when other issues remain. The Ninth Appellate District has aptly explained:

> Even if we were to address the argument, we have consistently held that "[o]ur review is limited to the alleged errors in the portion of the trial court's decision which *denied* the political subdivision the benefit of immunity; and this Court lacks jurisdiction to address any other interlocutory rulings the trial court made." (Emphasis added.). *Carswell v. Akron*, 9th Dist. Summit No. 29321, 2019-Ohio-4444, 2019 WL 5607858, ¶ 8, citing *Owens v. Haynes*, 9th Dist. Summit No. 27027, 2014-Ohio-1503, 2014 WL 1395537, ¶ 8, quoting *Makowski v. Kohler*, 9th Dist. Summit No. 25219, 2011-Ohio-2382, 2011 WL 1992032, ¶ 7. *Compare Jones v. Wheelersburg Loc.*

*School Dist.*, 4th Dist. Scioto No. 11CA3449, 2012-Ohio-3896, 2012 WL 3644152, ¶ 14 (noting that while R.C. 2744.02(C) provides that an order denying a political subdivision the benefit of immunity is a final order, there is no similar statutory provision designating an order granting a political subdivision the benefit of immunity as a final order).

*Schlegel v. Summit Cty.*, 9th Dist. Summit No. 29804, 2021-Ohio-3451, ¶ 17 (addressing the denial of summary judgment seeking immunity based on the exception in R.C. 2744.02(B)(2) (negligence of employees with respect to proprietary functions), but declining to address the trial court's grant of immunity based on a roadway maintenance immunity exception in R.C. 2744.02(B)(3)). Thus, we have no authority to render a decision on the issue of immunity on the strict liability dog bite claim.

**{¶42}** That said, our finding above that Appellant is entitled to sovereign immunity on the negligence claim effectively renders the strict liability ruling final. In the interest of justice and thoroughness, we will address the argument.

**{¶43}** We have held R.C. 955.28(B) (strict liability dog bite statute) does not expressly impose liability on the political subdivision and as such, does not lift the general grant of immunity. *In re T.B.Y. v. Martins Ferry*, 2016-Ohio-8482, 78 N.E.3d 242, ¶ 47-51 (7th Dist.). While *In re T.B.Y.* discusses R.C. 2744.02(B)(5) and its requirement that civil liability upon a political subdivision be expressly imposed by a section of the Revised Code, it is equally applicable to an employee of a political subdivision and R.C. 2744.03(A)(6)(c). The two sections are similar; the difference is R.C. 2744.02(B)(5) applies to political subdivisions, while R.C. 2744.03(A)(6)(c) applies to employees of political subdivisions. Both indicate civil liability can be imposed if it is expressly imposed by a section of the Revised Code. Both provisions further state civil liability shall not be construed to exist under a section merely because it imposes a responsibility or mandatory duty upon a political subdivision or employee.

**{¶44}** We explained the mandatory duty language in this exception (R.C. 2744.02(B)(5)) to immunity is a strict standard; there must be an express statement in the statute imposing civil liability on the political subdivision in order for the statute to impose civil liability. *In re T.B.Y.* at ¶ 48. "'Expressly' means 'in direct or unmistakable terms: in

an express manner: explicitly, definitely, directly.'" *Id.* An express duty is not sufficient to satisfy this exception to immunity; "civil liability itself must be explicit." *Id.*

**{¶45}** Using this reasoning, we concluded the language of R.C. 955.28(B), "The owner, keeper, or harborer of a dog is liable in damages for any injury, death, or loss to person or property that is caused by the dog, unless * * *" does not impose civil liability on the political subdivision. *Id.* at ¶ 49. This is because there are no express terms in the statute imposing liability on the political subdivision. *Id.* at ¶ 50.

**{¶46}** Just as there are no express terms imposing liability on the political subdivision, there are also no express terms imposing liability on the employee of the political subdivision. Thus, *In re T.B.Y.* supports the trial court's grant of summary judgment on the strict liability claim.

**{¶47}** In *In re T.B.Y.*, we cited the decisions from the Ninth, Fifth, and Eleventh Appellate Districts holding similarly. *Id.*, citing *Alden v. Dorn,* 9th Dist. Summit No. 27878, 2016-Ohio-554, ¶ 11 ("While Appellants argue that R.C. 955.28(B)'s imposition of strict liability on any individual who owns, keeps, or harbors a dog that causes injury to another takes Appellees' actions in this matter outside the scope of R.C. 2744.03(A)(6)'s protection, 'R.C. 955.28(B) does not have any language expressly creating liability upon a political subdivision.' * * * Thus, because R.C. 955.28(B) does not expressly impose civil liability upon political subdivisions, Appellants' reliance upon this statute is misplaced."); *Jamison v. Stark Cty. Bd. of Commrs.,* 5th Dist. Stark No. 2014CA00044, 2014-Ohio-4906, ¶ 18, and *Perry v. East Cleveland,* 11th Dist. Lake No. 95–L–111, (Feb. 16, 1996). *See, also, Tasse v. Marsalek*, 8th Dist. Cuyahoga No. 109113, 2020-Ohio-5084, ¶ 30 (Chapter 955 does not impose civil liability merely because it imposes a responsibility.).

**{¶48}** It is acknowledged the Eleventh Appellate District in the more recent *Hicks* decision did hold that the strict liability dog bite statute lifts the immunity of the employee of the political subdivision:

> R.C. 2744.03(A)(6)(c) lifts an employee's immunity where "[c]ivil liability is expressly imposed upon the employee by a section of the Revised Code."
> R.C. 955.28(B) imposes liability on "[t]he owner, keeper, or harborer of a dog * * * for any injury * * * to person or property that is caused by the dog

* * *." A keeper, in the context of R.C. 955.28(B) is one having physical charge or care of the dog. *Lewis v. Chovan,* 10th Dist. No. 05AP-1159, 2006-Ohio-3100, at ¶ 12; see, also, *Garrard v. McComas* (1982), 5 Ohio App.3d 179, 182, 450 N.E.2d 730. Given the evidence in the record, we hold [the deputy] was a keeper pursuant to R.C. 955.28(B). Therefore, to the extent appellants suffered injury as a result of the dog's jumping episode, R.C. 955.28(B) expressly imposes civil liability upon [the deputy], an employee of the political subdivision, as a matter of law.

*Hicks v. Allen*, 11th Dist. Ashtabula No. 2005-A-0002, 2007-Ohio-693, ¶ 23.

{¶49} As explained above, Judge Grendell dissented to the holding that there was a genuine issue of material fact as to whether the deputy was acting manifestly outside the scope of his employment. She also dissented to the portion of *Hicks* holding the strict liability statute lifted the deputy's immunity:

Deputy Allen's immunity is not abrogated by R.C. 955.28(B), which imposes civil liability on "[t]he owner, keeper, or harborer of a dog * * * for any injury * * * caused by the dog."

This court has previously held that R.C. 955.28 does not constitute an exception to political subdivision immunity. *Perry v. East Cleveland* (Feb. 16, 1996), 11th Dist. No. 95-L-111, 1996 Ohio App. LEXIS 507, at *16, 1996 WL 200558. The majority distinguishes *Perry* on the grounds that the holding in *Perry* only applies to political subdivisions, not their employees. "R.C. 955.28(B) merely provides that 'the owner, keeper, or harborer of a dog is liable * * * ' [i]t does not contain any language expressly creating liability upon a political subdivision". *Id.*

Similarly, R.C. 955.28(B) does not contain any language expressly creating liability upon the employees of a political subdivision. The majority argues that Allen is a "keeper * * * of a dog" within the context of R.C. 955.28(B). But it is equally true that political subdivisions, East Cleveland in the *Perry* case and Ashtabula County in the present case, are the "owner [s] * * * of * * * dog[s]" within the context of R.C. 955.28(B). It is inconsistent, therefore,

Case No. 21 JE 0013

to apply the holding in *Perry* to political subdivisions but not their employees. The rationale for exempting both political subdivisions and their employees from R.C. 955.28, as recognized by this court, is the "presumption against interpreting other statutes as stating an exception to the general rule concerning sovereign immunity." *Id.* at *16-*17 (citation omitted).

*Hicks,* 2007-Ohio-693 at ¶ 60-62 (Grendell, J., concurring in part and dissenting in part).

**{¶50}** The *Hicks* dissent's reasoning is persuasive, especially given our reasoning in *In re T.B.Y.* and the language of R.C. 2744.02(B)(5) and R.C. 2744.03(A)(6)(c). Consequently, the trial court's decision that Appellant is immune from the strict liability dog bite claim is affirmed.

## Conclusion

**{¶51}** Appellant's sole assignment has merit; given the undisputed facts, he is entitled to immunity as a matter of law on the negligence claim. Appellee's cross-appeal was not properly filed, and the issue being appealed is not a final order. However, due to our ruling on the negligence claim, the issue is now final. That said, Appellee's argument is meritless; Appellant is immune from the strict liability dog bite claim. The trial court's decision is reversed and judgment is granted in Appellant's favor. Appellant is immune as an employee of a political subdivision on both the negligence claim and the strict liability dog bite claim.

Waite, J., concurs.

D'Apolito, J., dissent with attached dissenting opinion.

D'Apolito, J., dissenting opinion.

{¶52} I respectfully dissent with the majority's opinion of reversal and holding that Appellant is entitled to sovereign immunity as a matter of law on Appellee's negligence claim in this case.

{¶53} As addressed in the majority opinion, Appellant, a Deputy with the Belmont County Sheriff's Department, claimed immunity as an employee of a political subdivision when his K-9 dog bit Appellee at a cookout hosted by Appellant at his house. This writer stresses that there were two prior incidents with this same dog. I do not believe that this is a question of law to be decided by the judge.

{¶54} Instead, I would affirm the trial court's decision. I agree with the trial court denying Appellant's motion for summary judgment on Appellee's negligence claim and its finding that whether or not Appellant was immune for negligence was a matter for the jury to decide. Regarding the statute at issue, R.C. 2744.03(A)(6)(a), I believe there is a genuine issue of material fact as to whether Appellant was acting manifestly outside his scope of employment. This is consistent with *Hicks v. Allen*, 11th Dist. Ashtabula No. 2005-A-0002, 2007-Ohio-693, wherein the appellate court decided that the issue of whether an employee was within the scope of employment is generally a question of fact for the jury to decide. Accordingly, because I believe this matter involves a question of fact, I would affirm the judgment of the trial court

{¶55} However, in the alternative, if this matter does involve a question of law, as determined by the majority, I do not believe this court should reverse and enter judgment for Appellant. Rather, I would remand this case for the trial judge to decide this issue because I believe that the trial judge is in the best position to determine this issue not the appellate court.

{¶56} For the foregoing reasons, I respectfully dissent.

---

For the reasons stated in the Opinion rendered herein, the assignment of error is sustained, and the trial court's decision is reversed with Judgment granted in Appellant's favor.  Cross-Appeal denied.  Costs taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**